**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq.  (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
        kgrombacher@bradleygrombacher.com
        lking@bradleygrombacher.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

PETER TELFORD, an individual, and on
behalf of classes of similarly situated
individuals,

                    Plaintiff,

v.

U-HAUL INTERNATIONAL, INC.,

                    Defendant.

CASE NO:  **'22CV1475 WQHMSB**

**CLASS ACTION** COMPLAINT FOR:

1.  **NEGLIGENCE;**

2.  **BREACH OF IMPLIED CONTRACT;**

3.  **VIOLATIONS OF THE DRIVER'S PRIVACY PROTECTION ACT, 18 U.S.C. § 2721, ET SEQ.; AND**

4.  **DECLARATORY JUDGMENT.**

    **DEMAND FOR A JURY TRIAL**

Plaintiff Peter Telford ("Plaintiff") brings this Class Action Complaint against U-Haul International, Inc. ("U-Haul" or "Defendant"), individually and on behalf of all others similarly situated ("Class Members"), and alleges, upon personal knowledge as to his own actions and his counsels' investigations, and upon information and belief as to all other matters, as follows:

## I.    INTRODUCTION

1.    Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personal identifiable information ("PII")[1] for past and current customers of Defendant, including, but not limited to, name, date of birth, and driver's license number or state identification number.

2.    According to Defendant's website, Defendant is "is an American moving truck, trailer, and self-storage rental company, based in Phoenix, Arizona, that has been in operation since 1945."[2]

3.    Prior to and through April 5, 2022, Defendant obtained the PII of Plaintiff and Class Members, including the PII of Plaintiff, who was a customer of Defendant, and stored that PII, unencrypted, in an Internet-accessible environment on Defendant's network.

4.    Defendant's Privacy Policy (the "Privacy Policy"), posted on its website, represents that it "[w]e use commercially reasonable physical, managerial, and technical safeguards to preserve the integrity and security of your Information and our systems. We cannot, however, ensure or warrant the security of any information you transmit to Us and you do so at your own risk. However, please note that this is not a guarantee that such information may not be accessed, disclosed, altered, or destroyed by breach of any of our physical, technical, or managerial safeguards."[3]

5.    On or before August 1, 2022, Defendant learned of a data security incident on its network (the "Data Breach").

/ / /

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual
[2] https://www.uhaul.com/About/History/ (last accessed Sept. 27, 2022)
[3] https://www.uhaul.com/Legal/PrivacyPolicy/#Security (last accessed Sept. 27, 2022)

CLASS ACTION COMPLAINT

6.      Defendant determined that, during the Data Breach, an unknown actor compromised two unique passwords for accessing Defendant's contract search tool and accessed the contracts of Defendant's past and current customers, including Plaintiff and Class Members.

7.      On or around September 9, 2022, Defendant began notifying Plaintiff and Class Members of the Data Breach.

8.      By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted PII accessed by an unauthorized actor included name, date of birth, and driver's license number or state identification number.

9.      The exposed PII of Plaintiff and Class Members can be sold on the dark web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. Plaintiff and Class Members now face a lifetime risk of (i) identity theft, which is heightened here by the loss of driver's license numbers or state identification number, and (ii) the sharing and detrimental use of their sensitive information.

10.      The PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiff and Class Members. In addition to Defendant's failure to prevent the Data Breach, Defendant waited several months after the Data Breach occurred to report it to the SEC and affected individuals. Defendant has also purposefully maintained secret the specific vulnerabilities and root causes of the breach and has not informed Plaintiff and Class Members of that information.

11.      As a result of this delayed response, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm, including the sharing and detrimental use of their sensitive information. The risk will remain for their respective lifetimes.

12.      Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and

(iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

13.    Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) the disclosure of their private information, and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

14.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiff and Class Members was compromised through disclosure to an unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II.    PARTIES

15.    Plaintiff Peter Telford is a citizen of California residing in San Diego, California.

16.    Defendant is a Nevada corporation with a principal place of business in Phoenix, Arizona.

17.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this complaint to reflect the true

names and capacities of such other responsible parties when their identities become known.

18.    All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III.    JURISDICTION AND VENUE

19.    This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member, including Plaintiff, is a citizen of a state different from Defendant to establish minimal diversity.

20.    The Southern District of California has personal jurisdiction over Defendant because it conducts substantial business in California and this District.

21.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant operates in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## IV.    FACTUAL ALLEGATIONS

*Background*

22.    Plaintiff and Class Members, who are past and current customers of Defendant, provided and entrusted Defendant with sensitive and confidential information, including name, date of birth, and driver's license number or state identification number.

23.    Plaintiff and Class Members relied on this sophisticated Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII.

24.    Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties.

*The Data Breach*

25.    On or about September 9, 2022, Defendant sent Plaintiff and Class Members a *Notice of Recent Security Incident* ("Notice"). Defendant informed Plaintiff and other Class

Members that it "detected a compromise of two unique passwords that were used to access a customer contract search tool that allows access to rental contracts for U-Haul customers."

26.     Defendant also informed Plaintiff and other Class members that the information unauthorizedly accessed included their "name and driver's license or state identification number."

27.     The Breach, according to the Notice, began from November 5, 2021 through April 5, 2022. A duration of five months.

28.     Defendant admitted in the Notice and the SEC filing that an unauthorized actor accessed sensitive information about Plaintiff and Class Members, including name, date of birth, and driver's license number or state identification number.

29.     In response to the Data Breach, Defendant claims that cybersecurity experts are "are implementing additional security safeguards and controls to prevent further such incidents."[4] However, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not been shared with regulators or Plaintiff and Class Members, who retain a vested interest in ensuring that their information remains protected.

30.     The unencrypted PII of Plaintiff and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the PII of Plaintiff and Class Members.

31.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of PII for Plaintiff and Class Members.

32.     Because Defendant had a duty to protect Plaintiff's and Class Members' PII, Defendant should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

33.     In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks because warnings

---

[4] U-Haul International, Inc., Current Report (Form 8-K) (Sept. 19, 2022).

were readily available and accessible via the internet.

34.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[5]

35.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[6]

36.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[7]

37.     This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) cybercriminals were targeting big companies such as Defendant, (ii) cybercriminals were ferociously aggressive in their pursuit of big companies such as Defendant, (iii) cybercriminals were leaking corporate information on dark web portals, and (iv) cybercriminals' tactics included threatening to release stolen data.

38.     In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of Plaintiff and Class Members in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and

---

[5] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019), available at https://www.ic3.gov/Media/Y2019/PSA191002 (last accessed Sept. 27, 2022)

[6] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020), available at https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed Sept. 27, 2022).

[7] U.S. CISA, Ransomware Guide September 2020, available at https://www.cisa.gov/sites/default/files/publications/CISA_MS-ISAC_Ransomware%20Guide_S508C_.pdf (last accessed Sept. 27, 2022).

CLASS ACTION COMPLAINT

Defendant's type of business had cause to be particularly on guard against such an attack.

39.    Prior to the Data Breach, Defendant acknowledged, in its parent company's annual report filed with the SEC in July 2021, as follows:

> Our information systems are largely Internet-based, including our point-of-sale reservation system, payment processing and telephone systems. While our reliance on this technology lowers our cost of providing service and expands our abilities to better serve customers, it exposes us to various risks including natural and man-made disasters, terrorist attacks and cyber-attacks. We have put into place extensive security protocols, backup systems and alternative procedures to mitigate these risks. However, disruptions or breaches, detected or undetected by us, for any period of time in any portion of these systems could adversely affect our results of operations and financial condition and inflict reputational damage.
>
> In addition, the provision of service to our customers and the operation of our networks and systems involve the storage and transmission of proprietary information and sensitive or confidential data, including personal information of customers, system members and others. Our information technology systems may be susceptible to computer viruses, attacks by computer hackers, malicious insiders, or catastrophic events. Hackers, acting individually or in coordinated groups, may also launch distributed denial of service attacks or ransom or other coordinated attacks that may cause service outages or other interruptions in our business and access to our data. In addition, breaches in security could expose us, our customers, or the individuals affected, to a risk of loss or misuse of proprietary information and sensitive or confidential data. The techniques used  to obtain unauthorized access, disable or degrade service or sabotage systems change frequently, may be difficult to detect for a long time and often are not recognized until launched against a target. As a result, we may be unable to anticipate these techniques or to implement adequate preventative measures.
>
> Any of these occurrences could result in disruptions in our operations, the loss of existing or potential customers, damage to our brand and reputation, and litigation and potential liability for the Company. In addition, the cost and operational consequences of implementing further data or system protection measures could be significant and our efforts to deter, identify, mitigate and/or eliminate any security breaches may not be successful.[8]

40.    Prior to the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

41.    Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the driver's license numbers and other sensitive data elements within the PII to protect

---

[8] AMERCO 2021 Annual Report, available at https://www.amerco.com/reports.aspx (last accessed Sept. 27, 2022). AMERCO is the parent company of Defendant.

against their publication and misuse in the event of a cyberattack.

***Defendant Acquires, Collects, and Stores the PII of Plaintiff and Class Members.***

42.    As a condition of being a past or current customers of Defendant, Defendant required that Plaintiff and Class Members entrust Defendant with highly confidential PII.

43.    Defendant acquired, collected, and stored the PII of Plaintiff and Class Members.

44.    By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

45.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***Securing PII and Preventing Breaches***

46.    Defendant could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the PII of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

47.    Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

48.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

49.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[9] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other

---

[9] 17 C.F.R. § 248.201 (2013)

things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[10]

50.    The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, particularly driver's license numbers, fraudulent use of that information and damage to victims may continue for years.

***Value of Personal Identifiable Information***

51.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[11] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[12] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[13]

52.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

53.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[14]

/ / /

---

[10] *Ibid.*

[11] Your personal data is for sale on the dark web. Here's how much it costs, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Sept. 27, 2022)

[12] Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian, Dec. 6, 2017, available at: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Sept. 27, 2022)

[13] In the Dark, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Sept. 27, 2020)

[14] Time Greene, Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers, IT World, (Feb. 6, 2015), available at: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Sept. 27, 2022).

54.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

55.    The fraudulent activity resulting from the Data Breach may not come to light for years.

56.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[15]

57.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including driver's license numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

58.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

59.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data contained in Defendant's contract search tool, amounting to potentially tens of thousands of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

60.    To date, Defendant has offered Plaintiff and Class Members only one year of credit monitoring and identity theft detection through Equifax. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

---

[15] Report to Congressional Requesters, GAO, at 29 (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf (last accessed Sept. 27, 2022)

CLASS ACTION COMPLAINT

61. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

***Plaintiff's Experience***

62. On several occasions, Plaintiff was a customer of Defendant. As a condition of being a customer of Defendant, Defendant required that he provide and entrust his PII.

63. Plaintiff received Defendant's Notice, dated September 9, 2022, on or about that date. The notice stated that Plaintiff's name, date of birth, and driver's license number or state identification number were accessed by an unauthorized actor.

64. As a result of the Data Breach, Plaintiff's sensitive information was acquired by an unauthorized actor. The confidentiality of Plaintiff's sensitive information has been irreparably harmed. For the rest of his life, Plaintiff will have to worry about when and how his sensitive information may be shared or used to his detriment.

65. As a result of the Notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

66. Additionally, Plaintiff is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

67. Plaintiff stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

68. Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

69. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his driver's license number, being placed in the hands of unauthorized third parties and possibly criminals.

70. Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future

breaches.

***Plaintiff's Exhaustion of Administrative Remedies – California Consumer Privacy Act***

71.    Plaintiff is currently complying with the procedures for bringing suit specified in California Civil Code section 1798.50(b).

72.    Plaintiff will give required notice to Defendant of the specific provisions of the California Consumer Privacy Act to have been violated, including the facts and theories to support the alleged violations.

73.    This Complaint will be amended when more than thirty (30) days have passed since the date the notice was mailed to Defendant, if Defendant does not cure the effects of the Data Breach, which would require retrieving the PII or securing the PII from continuing and future use, within 30 days of delivery of such CCPA notice letter (which Plaintiff believes any such cure is not possible under these facts and circumstances).

## V.    CLASS ALLEGATIONS

74.    Plaintiff brings this nationwide class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

75.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:
**All individuals whose PII was compromised in the data breach that is the subject of the Notice of Recent Security Incident that Defendant sent to Plaintiff and Class Members on or around September 9, 2022 (the "Nationwide Class").**

76.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

/ / /

/ / /

CLASS ACTION COMPLAINT

77.     Alternatively, Plaintiffs proposes the following alternative classes by state or groups of states, defined as follows:

**[Name of State] Subclass: All residents of [name of State] whose PII was compromised in the data breach that is the subject of the Notice of Recent Security Incident that Defendant sent to Plaintiff and Class Members on or around September 9, 2022.**

78.     Also in the alternative, Plaintiffs request additional subclasses as necessary based on the types of PII and PHI that were compromised.

79.     Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

80.     Numerosity, Fed R. Civ. P. 23(a)(1): The Nationwide Class (the "Class") are so numerous that joinder of all members is impracticable. Defendant has identified numerous individuals whose PII was compromised in the Data Breach, and the Class is apparently identifiable within Defendant's records.

81.     Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

  a.   Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

  b.   Whether Defendant had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

  c.   Whether Defendant had duties not to use the PII of Plaintiff and Class Members for non-business purposes;

  d.   Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

  e.   When Defendant actually learned of the Data Breach;

  f.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

  g.   Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

13

h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

k.  Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

l.  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

82.     Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's misfeasance.

83.     Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

84.     Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel

experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

85.    <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

86.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

87.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

88.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

CLASS ACTION COMPLAINT

89.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

90.     Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

91.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b.  Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c.  Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e.  Whether Defendant breached the implied contract;

f.  Whether Defendant adequately and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members; and,

16

i.    Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## COUNT I
## NEGLIGENCE
**(On Behalf of Plaintiff and the Nationwide Class)**

92.    Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in the paragraphs above.

93.    As a condition of being past and current customers of Defendant, Plaintiff and Class Members were obligated to provide and entrust Defendant with certain PII.

94.    Plaintiff and the Nationwide Class provided and entrusted their PII to Defendant the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and not disclose their PII to unauthorized third parties.

95.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Nationwide Class could and would suffer if the PII were wrongfully disclosed.

96.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Nationwide Class involved an unreasonable risk of harm to Plaintiff and the Nationwide Class, even if the harm occurred through the criminal acts of a third party.

97.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiff and the Nationwide Class in Defendant's possession was adequately secured and protected.

98.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove from an Internet-accessible environment the PII it was no longer required to retain pursuant to regulations and had no reasonable need to maintain in an Internet-accessible environment.

99.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiff and the Nationwide Class.

/ / /

17

100.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Nationwide Class. That special relationship arose because Plaintiff and the Nationwide Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

101.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Nationwide Class.

102.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Nationwide Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

103.    Plaintiff and the Nationwide Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Nationwide Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

104.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Nationwide Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII of Plaintiff and the Nationwide Class, including basic encryption techniques freely available to Defendant.

105.    Plaintiff and the Nationwide Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

106.    Defendant were in a position to protect against the harm suffered by Plaintiff and the Nationwide Class as a result of the Data Breach.

107.    Defendant had and continue to have a duty to adequately disclose that the PII of Plaintiff and the Nationwide Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Nationwide Class to (i) take steps to prevent,

mitigate, and repair any identity theft and the fraudulent use of their PII by third parties and (ii) prepare for the sharing and detrimental use of their sensitive information.

108.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and the Nationwide Class.

109.    Defendant has admitted that the PII of Plaintiff and the Nationwide Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

110.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Nationwide Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Nationwide Class during the time the PII was within Defendant's possession or control.

111.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Nationwide Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

112.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiff and the Nationwide Class in the face of increased risk of theft.

113.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Nationwide Class by failing to have appropriate procedures in place to detect and prevent dissemination of the PII.

114.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove from the Internet-accessible environment any PII it was no longer required to retain pursuant to regulations and which Defendant had no reasonable need to maintain in an Internet-accessible environment.

115.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Nationwide Class the existence and scope of the Data Breach.

116.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the PII of Plaintiff and the Nationwide Class would not have been

19

1    compromised.

2       117.    There is a close causal connection between Defendant's failure to implement

3    security measures to protect the PII of Plaintiff and the Nationwide Class and the harm, or risk of

4    imminent harm, suffered by Plaintiff and the Nationwide Class. The PII of Plaintiff and the

5    Nationwide Class was lost and accessed as the proximate result of Defendant's failure to exercise

6    reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate

7    security measures.

8       118.    As a direct and proximate result of Defendant's negligence, Plaintiff and the

9    Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual

10   identity theft; (ii) the loss of the opportunity of how its PII is used; (iii) the compromise, publication,

11   and/or theft of its PII; (iv) out-of-pocket expenses associated with the prevention, detection, and

12   recovery from identity theft, tax fraud, and/or unauthorized use of its PII; (v) lost opportunity costs

13   associated with effort expended and the loss of productivity addressing and attempting to mitigate

14   the actual and future consequences of the Data Breach, including but not limited to efforts spent

15   researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs

16   associated with placing freezes on credit reports; (vii) the continued risk to its PII, which remain in

17   Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail

18   to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Nationwide

19   Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent,

20   detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the

21   remainder of the lives of Plaintiff and the Nationwide Class.

22      119.    As a direct and proximate result of Defendant's negligence, Plaintiff and the

23   Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm,

24   including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and

25   non-economic losses.

26      120.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff

27   and the Nationwide Class have suffered and will suffer the continued risks of exposure of their PII,

28   which remain in Defendant's possession and is subject to further unauthorized disclosures so long

1    as Defendant fail to undertake appropriate and adequate measures to protect the PII in its continued

2    possession.

3        121.    As a direct and proximate result of Defendant's negligence, Plaintiff and the

4    Nationwide Class are entitled to recover actual, consequential, and nominal damages.

5        **COUNT II**
     **BREACH OF IMPLIED CONTRACT**

6        **(On Behalf of Plaintiff and the Nationwide Class)**

7        122.    Plaintiff re-alleges and incorporate by reference herein all of the allegations

8    contained in the paragraphs above.

9        123.    Defendant's Privacy Policy, posted on its website, represents that it "[w]e use

10   commercially reasonable physical, managerial, and technical safeguards to preserve the integrity

11   and security of your Information and our systems. We cannot, however, ensure or warrant the

12   security of any information you transmit to Us and you do so at your own risk. However, please

13   note that this is not a guarantee that such information may not be accessed, disclosed, altered, or

14   destroyed by breach of any of our physical, technical, or managerial safeguards."[16]

15       124.    Defendant parent company's 2021 Annual Report, filed with the SEC in July 2021,

16   represents that "Our information systems are largely Internet-based, including our point-of-sale

17   reservation system, payment processing and telephone systems. While our reliance on this

18   technology lowers our cost of providing service and expands our abilities to better serve customers,

19   it exposes us to various risks including natural and man-made disasters, terrorist attacks and cyber-

20   attacks. We have put into place extensive security protocols, backup systems and alternative

21   procedures to mitigate these risks."[17]

22       125.    In being past and current customers of Defendant, Plaintiff and Nationwide Class

23   Members provided and entrusted their PII to Defendant.

24       126.    Defendant's website confirms that Defendant intended to bind itself to protect the

25   PII that Plaintiff and Nationwide Class Members submitted to Defendant.

26   / / /

27

28   ---
[16] https://www.uhaul.com/Legal/PrivacyPolicy/ (last accessed Sept. 27, 2022).
[17] AMERCO 2021 Annual Report, available at https://www.amerco.com/reports.aspx (last visited Sept. 12, 2022).
     AMERCO is Defendant's parent company.

127.    Defendant required Plaintiff and Nationwide Class Members to provide and entrust their PII as condition of being past and current customers of Defendant.

128.    As a condition of being past and current customers of Defendant, Plaintiff and Nationwide Class Members provided and entrusted their PII. In so doing, Plaintiff and Nationwide Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such PII, to keep such PII secure and confidential, and to timely and accurately notify Plaintiff and Nationwide Class Members if their PII had been compromised or stolen.

129.    Plaintiff and the Nationwide Class Members fully performed their obligations under the implied contracts with Defendant.

130.    Defendant breached the implied contracts it made with Plaintiff and Nationwide Class Members by (i) failing to use commercially reasonable physical, managerial, and technical safeguards to preserve the integrity and security of Plaintiff's and Nationwide Class Members' PII, (ii) failing to encrypt driver's license numbers and other sensitive PII, (iii) failing to delete PII it no longer had a reasonable need to maintain, and (iv) otherwise failing to safeguard and protect their PII and by failing to provide timely and accurate notice to them that PII was compromised as a result of the data breach.

131.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Nationwide Class Members have suffered (and will continue to suffer) the threat of the sharing and detrimental use of their sensitive information; ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

/ / /

CLASS ACTION COMPLAINT

132.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Nationwide Class Members are entitled to recover actual, consequential, and nominal damages.

**COUNT III**
**Violations of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, et seq.**
**(On Behalf of Plaintiff and the Nationwide Class)**

133.    Plaintiff re-alleges and incorporate by reference herein all of the allegations contained in the paragraphs above.

134.    Defendant knowingly obtained Plaintiff's and the Nationwide Class's personal information, from a motor vehicle record, including their driver's licenses.

135.    Defendant voluntarily decided to populate its customer contracts when accessed via its contract search tool with Plaintiff's and the Nationwide Class's personal information, including their driver's license numbers.

136.    Defendant reasonably should have known that populating its customer contracts when accessed via its contract search tool would disclose Plaintiff's and the Nationwide Class's driver's license numbers to cybercriminals for impermissible purposes.

137.    In failing implement reasonable measures to prevent the Data Breach, Defendant disclosed Plaintiff's and the Nationwide Class's driver's license numbers for an impermissible purposes.

138.    Each of Plaintiff and Class Members demands actual damages, but not less than liquidated damages in the amount of $2,500, punitive damages upon proof of willful or reckless disregard of the law, reasonable attorney's fees and other litigation costs reasonable incurred, and such other preliminary and equitable relief as the court determines to be appropriate.

**COUNT IV**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Nationwide Class)**

139.    Plaintiff re-alleges and incorporate by reference herein all of the allegations contained in the paragraphs above.

140.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further

23

necessary relief. Further, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

141.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendant's data security measures remain inadequate. Defendant publicly denies these allegations. Furthermore, Plaintiff continue to suffer injury as a result of the compromise of their PII and remains at imminent risk that further compromises of their PII will occur in the future. It is unknown what specific measures and changes Defendant has undertaken in response to the Data Breach.

142.    Plaintiff and Class Members have an ongoing, actionable dispute arising out of Defendant's inadequate security measures, including (i) Defendant's failure to encrypt Plaintiff's and Class Members' PII, including driver's license numbers, while storing it in an Internet-accessible environment and (ii) Defendant's failure to delete PII it has no reasonable need to maintain in an Internet-accessible environment, including the driver's license number of Plaintiff.

143.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. Defendant owes a legal duty to secure the PII of past and current customers of Defendant;

    b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII; and

    c. Defendant's ongoing breaches of its legal duty continue to cause Plaintiff harm.

144.    This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry and government regulatory standards to protect consumers' PII. Specifically, this injunction should, among other things, direct Defendant to:

    a. engage third party auditors, consistent with industry standards, to test its systems for weakness and upgrade any such weakness found;

CLASS ACTION COMPLAINT

b. audit, test, and train its data security personnel regarding any new or modified procedures and how to respond to a data breach;

c. regularly test its systems for security vulnerabilities, consistent with industry standards;

d. implement an education and training program for appropriate employees regarding cybersecurity.

145.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant's occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

146.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

147.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and others whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and Class Members, requests judgment against Defendant and that the Court grant the following:

a. For an Order certifying the Nationwide Class and Sub-Classes, and appointing Plaintiff and his Counsel to represent such Class;

b. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate

disclosures to Plaintiff and Class Members;

  c. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii. requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

    v. prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

    vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

    viii. requiring Defendant to audit, test, and train its security personnel regarding

1     any new or modified procedures;

2    ix.  requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.  requiring Defendant to conduct regular database scanning and securing checks;

xi.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.  requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.  requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

///

CLASS ACTION COMPLAINT

xv.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

d.   For an award of damages, including actual, consequential, statutory, and nominal damages, as allowed by law in an amount to be determined;

e.   For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.   For prejudgment interest on all amounts awarded; and

g.   Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.


Respectfully Submitted,

DATED: September 28, 2022


By,      _/s/ Kiley Grombacher_
_____

**BRADLEY/GROMBACHER LLP**
Marcus J. Bradley, Esq.
Kiley L. Grombacher, Esq.
Lirit A. King, Esq.
*Attorneys for Plaintiff and the Proposed Class*